UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

NEXGEN COASTAL INVESTMENTS LLC,

        Plaintiff,

    v.

Case No. 21-cv-1216-pp

SHARON A. BLEDSOE,
FRANKLIN FINANCIAL CORPORATION,
and FORD MOTOR CREDIT COMPANY,
*a/k/a* FORD MOTOR CREDIT COMPANY LLC,

        Defendants.

---

### ORDER GRANTING PLAINTIFF'S SECOND RENEWED MOTION FOR SUMMARY JUDGMENT (DKT. NO. 32-5)

---

**I.    Background**

On October 19, 2021, the plaintiff filed a verified complaint against defendant Sharon Bledsoe, the Franklin Financial Corporation and the Ford Motor Credit Company alleging that Bledsoe had defaulted on her mortgage on a property located in the City of Milwaukee. Dkt. No. 1. Although the original amount of the mortgage taken out in 2006 was $85,1500, the plaintiff alleged in the complaint that Bledsoe made her last payment in 2018 and that the amount due and owing was $116,525.96 plus interest, late charges and attorney's fees. Id. at ¶15. The plaintiff sought an order foreclosing on the property and declaring the plaintiff to be the senior lien holder, and an order for the possession of the property or any purchaser at the foreclosure sale. Id.

On December 21, 2021, the Clerk of Court entered default as to Ford Motor Credit Company and Franklin Financial Corporation. On December 9,

2021, the court received from Bledsoe a letter—presumably meant to be an answer—explaining why she had not been able to make payments and asking for a "new obligation or modification." Dkt. No. 5. On February 2, 2022, the plaintiff filed a motion to strike the answer, dkt. no. 13, as well as a motion for summary judgment, dkt. no. 14. Bledsoe followed up with a letter asking for an appointment with a mediator to resolve the dispute. Dkt. No. 16.

The court scheduled a hearing; the plaintiff did not appear at that hearing, and the court denied the plaintiff's motion to strike the answer, noting that Bledsoe had attempted to respond and did not have the assistance of counsel. Dkt. No. 17 at 3. The court explained to Bledsoe how to properly respond to the complaint. Id. at 3-4. The court denied without prejudice the plaintiff's motion for summary judgment because it did not comply with Civil Local Rule 56(a)(1) (E.D. Wis.). Id. at 4-5. The court gave Bledsoe a deadline of August 19, 2022 by which to file an amended answer. Id. at 5.

On September 13, 2022—*before* the deadline the court had provided for the defendant to file an amended answer, and even though it had allowed her to do so—the plaintiff filed another motion for summary judgment. Dkt. No. 20. The defendant timely filed an amended answer. Dkt. No. 22. Given the defendant's timely amended answer, the court issued an order denying the plaintiff's second motion for summary judgment as moot. Dkt. No. 23. That order required the parties to meet and confer, and to file a joint Rule 26(f) scheduling plan by November 10, 2022. Id. at 1. On November 10, 2022—the date the Rule 26(f) plan was due—the court received a letter from Bledsoe, saying that from the date she received the court's order through November 7, 2022, she had waited to be contacted by the plaintiff's counsel. Dkt. No. 24. When no one contacted her, Bledsoe said she called and asked to speak to the

2

plaintiff's counsel; she said she was told that she was "not suppose to contact the lawyer." Id. at 1. The defendant explained that she'd made additional efforts to speak to the plaintiff's lawyer but had been unsuccessful. Id. at 2-3.

Given this series of events, the court issued an order to show cause requiring that by December 16, 2022, the plaintiff must file a written document showing cause why the court should not dismiss the case for the plaintiff's lack of diligence. Dkt. No. 25. That prompted the plaintiff to file a joint Rule 26(f) report, which the court received on December 1, 2022, dkt. no. 26, and a written response to the order to show cause, which the court received on December 2, 2022, dkt. no. 27. The plaintiff said that "office error" and "staff shortages" had caused its failures to pursue the litigation, but that it had filed the Rule 26(f) plan and was ready to proceed. Dkt. No. 27 at 1-2. Accordingly, on December 2, 2022, the court issued a scheduling order and discharged the order to show cause. Dkt. No. 28. The joint Rule 26(f) report advised the court that the parties were "currently discussing terms of a potential settlement," and that if those discussions were unsuccessful, they were interested in mediation. Dkt. No. 26 at 4.

On March 10, 2023, the plaintiff filed a status report explaining that the parties had tried to resolve the dispute but that Bledsoe had insufficient income to make payments. Dkt. No. 30. This report made no mention of mediation and asserted that the plaintiff would be filing a motion for summary judgment in seven days. Id. On March 31, 2023, the court received from the plaintiff a "second renewed motion" for summary judgment; this motion complied with this court's local rules by including the notice required under Civil L.R. 56(a)(1). Dkt. No. 32-5. The plaintiff also filed a brief in support of the motion, dkt. no. 32-1; a proposed statement of material facts, dkt. no. 32; a

3

declaration, dkt. no. 32-3; an affidavit, dkt. no. 32-6 and an affidavit of fees and costs, dkt. no. 32-2. On April 27, 2023, Bledsoe filed a one-page response to the plaintiff's proposed statement of material facts but has not responded to the plaintiff's legal arguments and did not include citations to the record. Dkt. No. 34.

The parties failed to alert the court to the fact that on September 17, 2023—approximately five months after responding to the plaintiff's proposed statement of material facts—Bledsoe filed a Chapter 13 voluntary bankruptcy petition and that the Chapter 13 plan provided for the plaintiff's claim by stating that Bledsoe would engage in mediation. In re Sharon A. Bledsoe, Case No. 23-24329-gmh, Dkt. No. 16 (E.D. Wis. Bank., 2023). It appears that Bledsoe never engaged in mediation. Id. at 46. Almost a year after filing the second renewed motion for summary judgment, the plaintiff filed a document titled "Notice of Filing Order Dismissing Bankruptcy Case," and attached a January 10, 2024 order from the bankruptcy court dismissing Bledsoe's Chapter 13 bankruptcy case on the trustee's motion. Dkt. No. 35 at 4.

**II.     Plaintiff's Motion for Summary Judgment**

    A.      Legal Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Federal Rule of Civil Procedure 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." See Anderson, 477 U.S. at 248. A dispute over a "material fact" is "genuine" if "the

4

evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

A party asserting that a fact cannot be, or is, genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

Although the court generally gives filings from unrepresented litigants a liberal construction, summary judgment repeatedly has been referred to as the "put up or shut up" moment for parties seeking to take their claims to trial. Johnson v. Cambridge Indus. Inc., 325 F.3d 892, 901 (7th Cir. 2003) (citation omitted). Even an unrepresented litigant must "do more than simply show that there is some metaphysical doubt as to the material facts;" she must respond to the moving party's showing of a lack of material disputes of fact by designating specific facts in affidavits, depositions, answers to interrogatories or admissions that establish there is a genuine triable issue. Anderson, 477 U.S. at 256-57, 261. Because those facts must be admissible at trial, a litigant may not rely on inadmissible hearsay, speculation or conclusory allegations to defeat summary judgment. See Prude v. Meli, 76 F.4th 648, 661 (7th Cir. 2023). A bare contention by the non-moving party (in this case, Bledsoe) that an issue of fact exists does not create a factual dispute. Bellaver v. Quanex Corp., 200 F.3d 485, 492 (7th Cir. 2000).

5

B.  Findings of Fact

The plaintiff filed eleven proposed material facts. Dkt. No. 32. Bledsoe admits most of the proposed facts. Dkt. No. 34. To the extent that she denies or disputes a proposed fact, she has provided no citation to evidence in the record. Id. She attached a single rejected funds notice dated January 15, 2020 from FCI Lender Services, Inc., returning a payment of $250 because of the "status" of her account. Dkt. No. 34-1.

This case arises out of a note and mortgage executed by Bledsoe on or about December 21, 2006. Bledsoe executed an adjustable rate note payable to BWM Mortgage, LLC, the note holder. Dkt. No. 32-3 at 4. She promised to pay $85,150 plus interest at a yearly rate of 8.990% with the understanding that the interest rate might change on January 9, 2009 and every six months thereafter. Id. at 5. Under the terms of the note, Bledsoe agreed to pay a charge of 5% of the overdue payment of principal and interest if the note holder did not receive the payment by the end of the fifteenth day after the due date. Id. The note stated that Bledsoe would be in default if she did not pay the full amount due. Id.

On or about the same date, Bledsoe executed a mortgage securing payment of the note to BWM Mortgage, LLC. Id. at 22. Bledsoe does not dispute that a true and correct copy of the mortgage was recorded in the Register of Deeds, Milwaukee County Clerk's Office on January 8, 2007, as Instrument Number 0964498, and mortgaged the property described which was owned by and in Bledsoe's possession. Dkt. No. 32-3 at 22; Dkt. No. 34 at ¶3.

The mortgage was assigned from Mortgage Electronic Registration Systems, Inc. (as nominee for BWM Mortgage) to Ocwen Loan Servicing, LLC, Dkt. No. 32-3 at 40; from Ocwen to Kajaine Fund III, id. at 41; and from

6

Case 2:21-cv-01216-PP   Filed 11/01/24   Page 6 of 16   Document 37

Kajaine Fund III to NexGen Coastal Investments, LLC, id. at 42. NexGen currently holds the note and mortgage. Id. at 10, 42.

Bledsoe admits that she currently owns the property by virtue of a warranty deed dated April 13, 2000 and recorded in the Register of Deeds, Milwaukee County Clerk's Office on May 9, 2000 in Instrument Number 7907816. Dkt. No. 34 at ¶5. She further admits that the plaintiff's mortgage lien on the property is superior to the known interests of all other parties to this case. Dkt. No. 34 at ¶7.

Bledsoe defaulted under the note. Dkt. No. 32 at ¶7. The plaintiff says that the default occurred on February 1, 2018, and that no subsequent payments have been made. Id. The documents cited by the plaintiff do not reflect a default on February 1, 2018. The plaintiff cites Exhibit 6, which is the Loan Master Report from FCI Lender Services, Inc.; the document is (as such documents always are) difficult to follow, but it appears to show that on May 8, 2018, the plaintiff began making a twice-monthly payment of $250. Dkt. No. 32-3 at 56-59. Based on that document, it appears that no payment was made in February of 2018 (even at a reduced amount). Bledsoe admits that she has not paid on the mortgage but asserts that FCI Lender Services rejected her payments and that the woman she called refused to say why. Dkt. No. 34 at ¶7. She says that she was paid up through February of 2020. Id. Bledsoe says that she had a loan modification that the plaintiff refused to honor. Id. at ¶8. Bledsoe did not attach documentation in support of her assertions.

The plaintiff says that when it filed the complaint, it declared the full amount due and payable, except to any extent any part of that amount is or would be subject to a statute of limitations or statute of repose. Dkt. No. 32 at ¶8. Bledsoe does not object to that portion of the plaintiff's proposed fact. Nor

7

does Bledsoe object to the plaintiff's proposed fact that all conditions precedent to this action have occurred, been satisfied, or been waived. Dkt. No. 34 at ¶9.

Bledsoe admits that she owes $173,864.02 plus interest accruing since the date of the affidavit and costs; she disputes the award of attorney's fees because she says that the plaintiff's attorney filed things incorrectly. Dkt. No. 34 at ¶10; Dkt. No. 32 at ¶10. She admits that she agreed to pay reasonable attorney's fees and to reimburse the plaintiff's attorneys for their taxable costs, but again objects because the plaintiff's attorney "filed things incorrectly." Id.

C. Analysis

The plaintiff moves for summary judgment on Count One (foreclosure) and Count Two (order of possession against all defendants) because there are no genuine issues of material fact as to the following claims: (1) the mortgage constitutes a valid lien on the property; (2) the mortgage is in default and superior to any right, title, interest or claim of all defendants; (3) the plaintiff may enforce the mortgage and note; (4) the entire indebtedness secured by the mortgage is due and collectable; and (5) the plaintiff is entitled to foreclose on the property. Dkt. No. 32-1 at 4.

The plaintiff provided the bare minimum in terms of documentation, and, as a result, the court had to search the record when considering the motion. For example, the proposed statement of material facts does not reference the forbearance agreement, even though the plaintiff mentioned the agreement (but did not cite to it) in the brief. See dkt. nos. 32, 32-1 at 8. The court located the forbearance agreement in Exhibit 1. Dkt. No. 32-3 at 16. To the extent that the plaintiff includes citations in its brief, it simply cites the "Affidavit in Support of Renewed Motion for Summary Judgment" rather than the separately filed exhibits that support the assertion. See Dkt. No. 32-1 at 6-8. Additionally, the

plaintiff includes several proposed facts that are not supported by the citation to the record. Proposed fact no. 3 states that a true and correct copy of the mortgage was filed with the Register of Deeds and cites to Exhibit 3 (which is the plaintiff's articles of organization for a Florida limited liability company). Dkt. No. 32 at ¶3. (The plaintiff may have intended to cite to the copy of the mortgage at Exhibit 2, which is stamped by the Register of Deeds. Dkt. No. 32-3 at 22.) Similarly, proposed fact no. 7 lists the date of default as February 1, 2018 but cites to exhibit 6 (which has no transaction entries between June 15, 2016 and May 8, 2018). Dkt. Nos. 32 at ¶7; 32-3 at 57.

That said, the plaintiff has done enough to prevail on summary judgment, in part because Bledsoe either admits the key proposed facts or otherwise fails to cite to record evidence. The plaintiff gave Bledsoe notice of the local rule that warned her the court would accept as true any factual assertion in the plaintiff's affidavit, declaration or other admissible documentary evidence unless Bledsoe submitted her own affidavit, declaration, or other admissible evidence contradicting the factual assertion. Dkt. No. 32-5 (citing Civil L.R. 56(a)(1)(A)). Civil Local Rule 56(b)(4) states that any uncontroverted statements of material fact will be deemed admitted solely for the purpose of resolving summary judgment.

In Wisconsin, to foreclose on a mortgage that secures an instrument, a party must show that it is entitled to enforce the instrument by proving that it is the "holder" of the instrument or "a nonholder in possession of the instrument who has the rights of a holder." Wis. Stat. §403.301. The plaintiff has filed the allonge to the note, assigning it from Kajaine Fund to NexGen, dkt. no. 32-3 at 10, and the assignment of the mortgage from Kajaine Fund to

9

NexGen, dkt. no. 32-3 at 42. Bledsoe admits that NexGen holds the note and mortgage and that she is in default. Dkt. No. 34 at ¶4.

The plaintiff filed a copy of the $85,150 promissory note executed on December 21, 2026 by Bledsoe and made payable to BWM Mortgage, LLC for property located at 4176 N. 44th Street, Milwaukee, Wisconsin 53216. Dkt. No. 32-3 at 4. The terms of the note are unambiguous. Bledsoe agreed to pay interest at the yearly rate of 8.99%, with initial monthly payments of $684.52. Dkt. No. 32-3 at 5. She also agreed to a late charge of 5% for the overdue payment of principal and interest. Id. at 6. The note stated that if Bledsoe were in default, the plaintiff was required to provide written notice that it could require the full unpaid amount plus interest (if the overdue amount was not paid by a certain date). Id. If the note holder required Bledsoe to pay in full, Bledsoe agreed to pay costs and expenses, including reasonable attorneys' fees. Id.

The plaintiff filed the executed mortgage securing payment of the note to BWM Mortgage LLC, dkt. no. 32-3 at 22, and Bledsoe admits that the mortgage was recorded in the Register of Deeds in the Milwaukee County Clerk's Office on January 8, 2007. Dkt. No. 34 at ¶3. Bledsoe also admits that the plaintiff's mortgage lien is superior to any other lienholder. Id. at ¶6. While the court assumes that the plaintiff named Franklin Financial Corporation and Ford Motor Credit Company because they have asserted liens on the property, the complaint does not allege that they are lienholders. In any event, those two defendants are in default. The plaintiff served Franklin Financial Corporation through its registered agent on October 26, 2021, dkt. no. 7, and Ford Motor Credit Company through its registered agent on October 22, 2021, dkt. no. 8.

The Clerk of Court has entered default as to both. The court is not aware of any other lienholders with respect to this property.

Additionally, Bledsoe admits that she owns the property located at 4176 N. 44th Street by virtue of the warranty deed recorded in the Register of Deeds, Milwaukee County Clerk's Office on May 9, 2000 in Instrument Number 7907816. Dkt. No. 32-3 at 24; Dkt. No. 34 at ¶5. While Bledsoe asserts—without documentation—that she made payments until February of 2020, the documentation from the plaintiff shows that payments stopped before that time. Dkt. No. 32-3 at 56-59.

The plaintiff filed a forbearance agreement dated May 2, 2018, in which Bledsoe acknowledged that she was in default and wanted to prevent foreclosure. Dkt. No. 32-3 at 16. She agreed to make twelve, semi-monthly payments of $250 due on the fourth of each month beginning May 4, 2018 and on the eighteenth of each month beginning May 18, 2018. Id. at 17. She agreed to pay all required property taxes and provide proof of payment and to add the Lender as an additional insured to the property insurance policies. Id. In the event of breach, Bledsoe agreed that foreclosure would commence without additional notice except as required by Wisconsin law. Id. at 18. She agreed that she would have no valid defenses to any foreclosure case and agreed to repay attorneys' fees and costs. Id.

The April 12, 2019 letter the plaintiff's counsel sent to Bledsoe under the Fair Debt Collection Practices Act advised that Bledsoe had failed to comply with the forbearance agreement dated May 2, 2018 because of delinquent and unpaid city taxes and failure to transmit proof of homeowner's insurance. Dkt. No. 32-3 at 49. The only document filed by Bledsoe indicates that she

11

attempted to make a payment on January 15, 2020 that was returned because of the "status" of her account. Dkt. No. 34-1.

After the plaintiff filed its second renewed motion for summary judgment, Bledsoe filed her Chapter 13 bankruptcy petition. The court can take judicial notice of the record from the bankruptcy proceedings. It appears that, as recently as October 10, 2023, Bledsoe's bankruptcy attorney, on behalf of Bledsoe, agreed to a plan that provided for the plaintiff's claim by including a provision that Bledsoe would participate in the bankruptcy court's Mortgage Modification Mediation (MMM) program. In re Sharon Bledsoe, Case No. 23-24239-gmh. However, on November 15, 2023, the plaintiff's attorney filed an objection to confirmation of the plan, id., dkt. no. 37, and on the same day filed a motion for relief from stay as to 4176 N. 44th Street, dkt. no. 38. Bankruptcy Judge G. Michael Halfenger entered an order finding that Bledsoe had failed to file a motion for mediation within the time set by the court and that that failure made the plan's MMM provision ineffective by its terms. Dkt. No. 46. Judge Halfenger ordered that Bledsoe could not amend the plan to again provide for MMM treatment of the plaintiff's claim. Id. Judge Halfenger did not find that this failure was an obstacle to confirmation. Id. On January 10, 2024, Judge Halfenger granted the trustee's motion to dismiss the Chapter 13 proceeding. Dkt.. No. 48. All of this occurred while the plaintiff's second motion for summary judgment (filed in March of 2023) remained pending before this court.

At this point, the record establishes that Bledsoe is in default, that the plaintiff can accelerate the debt under the terms of the note, that the plaintiff holds the note and mortgage and that Bledsoe has waived any defenses. The plaintiff has filed the affidavit of Thomas Woods, Jr., the manager of NexGen,

who says that he maintains records on behalf of the plaintiff in connection with the loan. Dkt. No. 32-6 at ¶¶1, 2. Woods avers that the plaintiff is owed $60,000 on the principal balance, $56,525.96 for deferred unpaid principal due, $29,891.45 in interest owed to April 23, 2023, $1,100 in pre-accelerated late fees, $22,280.85 for the tax payment advance, $8,306.48 in unpaid charges/advances minus a suspense balance of $750 for a total of $177,354.74. Id. at ¶7. These assertions are supported by the Demand Loan Payoff attached to the affidavit. Dkt. No. 32-6 at 4.

Under the terms of the note and the forbearance agreement, Bledsoe agreed to pay reasonable attorneys' fees and costs if she failed to pay as required. Dkt. Nos. 32-3 at 6; 32-3 at 18. The plaintiff's attorney lists his costs as $1,913.12, which include mailing costs ($104.46), title search and examination ($395.74), filing fees in both cases ($606), a *lis pendens* filing fee ($95), PACER charges ($51.90), service of process ($375.40), gap title search ($84.62) and mediation costs in bankruptcy ($200). Dkt. No. 32-2. The court does not know what the plaintiff means by "filing fee in both cases," and will award only the filing fee for this case ($402). In addition, it does not appear that there was mediation in bankruptcy—Bledsoe never filed the motion for the MMM program—so the court will not award the mediation costs ($200).

With respect to attorney's fees, Bledsoe objects to the amount because the attorney "incorrectly filed" things. Dkt. No. 34 at ¶¶10, 11. The court has other concerns. The plaintiff's attorney filed an affidavit stating that the law firm "agreed to charge, and the client has agreed to pay, $265.00 per hour for all issues in the case for a total of 42.827 hours for a total of $11,349.24. In no event does the [law firm] seek to recover attorney's fees greater than the

13

amount billed to and paid by our client." Dkt. No. 32-2 at 2. However, the plaintiff's attorney says that

> [i]n the foreclosure action, the attorney and paralegals will perform, at a minimum, the following legal services:
>
> a. Review the client's referral package;
> b. Review the loan documents;
> c. Review title exam summary and/or report;
> d. Prepare and review Lis Pendens, Complaint Civil Cover Sheet, certifications and Summonses;
> e. Review returns of service;
> f. Review answers, defenses, and other correspondence, if received or filed, and prepare the appropriate motions and responses;
> g. Prepare and review the motion for summary judgment, statement of material facts, brief in support of summary judgment and supporting affidavits;
> h. Prepare and review notice of hearing, proposed final summary judgment, final disposition and proposed notice of sale;
> i. Prepare for and attend Final Judgment hearing as necessary;
> j. If this matter proceeds to sale, additional time may be incurred in preparing the final bid, certificate of sale, certificate of disbursements, and/or certificate of title.

Id. at 1-2.

The court has no idea how much time the plaintiff's attorney actually spent on this litigation or whether the agreed-upon amount (42.827 hours) was reasonable. The plaintiff's attorney did not appear for a September 12, 2022 scheduled hearing on the plaintiff's first motion for summary judgment. Dkt. No. 19. As a result, the plaintiff did not realize the court had given Bledsoe additional time to file an answer and the plaintiff filed a renewed motion for summary judgment. Dkt. No. 23. The court denied the renewed motion and ordered the parties to file their Rule 26(f) report by November 10, 2022; the court's order stated that the plaintiff's counsel was responsible for filing the report. Dkt. No. 23. The plaintiff did not comply with that order and Bledsoe had to file a letter explaining that she had been unable to reach the plaintiff's

attorney. Dkt. No. 24. The court issued an order to show cause as to why the court should not dismiss the case for the plaintiff's lack of diligence. Dkt. No. 25. The Rule 26(f) plan stated that if the parties were not able to resolve the case through negotiation, they would submit to mediation. Rather than requesting mediation, the plaintiff's counsel filed a renewed motion for summary judgment only a week after notifying the court that settlement negotiations had failed.

Some of the work that the plaintiff's counsel listed as work typically performed in foreclosure cases did not occur here. The plaintiff's attorney didn't appear for the first hearing, there were no hearings on the plaintiff's second and third summary judgment motions and the plaintiff's attorney didn't prepare a proposed order. Additional services he listed may or not occur in the future. Although Bledsoe agreed to reimburse reasonable attorneys' fees, based on this record the court has no basis for determining whether $11,394.24 was reasonable. In his affidavit, the plaintiff's attorney says that his firm "does create specific timekeeping records in the residential foreclosure action." Dkt. No. 32-2 at ¶4. The court will allow the plaintiff's attorney to file an itemized time sheet supporting each fee he requests.

### III. Conclusion

The court **GRANTS** the plaintiff's second renewed motion for summary judgment. Dkt. No. 32. The court **FINDS** that $177,354.74 remains due and owing to the plaintiff.

The court **AWARDS** to the plaintiff's attorney reasonable attorneys' fees in an amount to be determined and $1,509.12 in costs.

The court **ORDERS** that by the end of the day on **November 15, 2024**, the plaintiff's attorney must file an itemized affidavit and/or supporting

15

documents with respect to his request for $11,349.24 in attorneys' fees. If she chooses to do so, defendant Sharon Bledsoe may file a response to the fee request in time for the court to *receive* her response by **November 29, 2024**.

After resolving the fee issue, the court will issue enter a judgment of foreclosure.

Dated in Milwaukee, Wisconsin this 1st day of November, 2024.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER
Chief United States District Judge**